Case on the list, which is Showers v. Beard. Is there somebody on the other side? You're Ms. Zack, right? I am, Your Honor. What about Ms. Roberto? Did you see her? She did check in. She was here. Yeah, we checked in together, actually. She's in the lounge. Would you like me to check? She may have stepped out. She may have been under the impression we were later on the list. Well, the list is posted. Should we go to the next case? Fine with me. Okay, we'll just go to the next case. Well, you can't go into the ladies' lounge. No, no, no. Not the ladies' room, Your Honor. The lounge over here. Oh. I think she's sitting there. Before we came in. Well, we don't really have a lot of time to waste. Why don't we go to the next case, and then we'll get you after next. Okay, Ms. Zack? Fair enough, Your Honor. Okay, we'll hear Calden v. Duffey. Sorry to hold you up, but we'll hear Calden v. Duffey. Mr. Primos? Yes. May it please the Court? Put it on the record, yes. Yes. Noel Primos for the appellants, the Calden family, and I have reserved three minutes for rebuttal. Thank you. Your Honors, our position as the appellants in this case is that the District Court erred when it granted summary judgment in favor of one of the defendants, Jay Freeberry, and that was a final order which we appealed, even though the case has not gone to trial. It was a final order in terms of Mr. Freeberry. And our position is That's because the District Court entered an order that there was no reason to, not to enter final judgment with respect to Freeberry. Yes, Your Honor. All right. Thank you. Yes, Your Honor. And our position is that the Court erred by not construing the facts in this case in the light most favorable to the plaintiffs. This of course centers on an incident that occurred April 12th of 2001 at the Calden home, and with respect to Mr. Freeberry, the issue centers on part of that incident where he ran from the side of the plaintiff's vehicle and threw a flashlight into the side window of that vehicle, injuring the plaintiffs. Is that the excessive force? Yes, Your Honor. What about any force used against the young man who opened the, went to the garage, the oldest son who went to the, is there a claim based on that force? Yes, Your Honor. With respect to Mr. Freeberry, in two respects. One is that as Adam was in the garage and hearing of course the glass shattering and his mother's scream, he has a gun, a man immediately after that ran toward the back door of the garage and Adam wrestled with him and trying to keep the door closed as the table dug into the defendant's back. We don't know who that individual was. It may well have been Mr. Freeberry. Since the defendants denied much of the actions that occurred that night, we don't know at this point even after discovery whether that individual was Mr. Freeberry or Mr. Armstrong. I thought with regard to the physical touching that the Freeberry claim was really as to Tiffany and not as to Adam. It really is as to Adam, Your Honor, and let me explain. The other aspect of Adam's claim as far as Officer Freeberry or Mr. Freeberry is concerned is that Mr. Freeberry was restraining Tiffany while Adam was being assaulted. So we are not contending that Tiffany has an excessive force claim against Mr. Freeberry for restraining her but that Adam does because Tiffany under the facts for summary judgment was attempting to assist her brother and Mr. Freeberry was restraining her so that she could not do that and in that way was assisting the other officers as they were assaulting Adam. There were two officers or more? There were a total of four, Your Honor. Two Newcastle officers, Mr. Armstrong and Mr. Freeberry, who were initially outside the residence and then at some point all four of the officers which then included Mr. Duffy, the FBI agent, and Mr. Sullivan, the Wilmington police officer, were all four in the residence participating in the assault against Adam. But going back to the flashlight throwing incident, the facts for purposes of summary judgment are that Mr. Freeberry was running at the Cowden vehicle from the side of the vehicle. From the side of the vehicle? Yes, Your Honor. And again, that's confirmed a number of times in the facts. According to Pamela Cowden, she explicitly stated he was charging toward the vehicle from the side of the vehicle. Nicholas testified that he saw a guy come from the backyard with a gun and a pole, a black pole. Micah said he wasn't in front of the car. I'm quoting, Your Honor. How old are these children? I'm sorry? How old are these children? How old are they now or how old were they then? Your Honor, the ironic thing is that most of them are now adults. But at the time, Adam was 14. He was the individual in the garage. Nicholas, and I'm sorry, Your Honor, I may have to refer to the facts. Micah. Micah was four. Nicholas was 11. Jordan was nine. And Luke was seven at the time of the incident. So as I was indicating, Micah, and this is a quote, Freeberry, quote, wasn't in front of the car. He was over there next to the garage. But he's four years old. He was four years old at the time, Your Honor. Is the crux of your argument that on the one hand, you have several witnesses presenting a factual scenario that Freeberry's coming from the side of the car is in no danger of being run over. Then on the other hand, you have Freeberry saying, they were coming at me. And then from your point of view, the unlikely throwing of a flashlight at a passenger door if a car's coming at you seems difficult, and at least to create an issue of fact. Is that the crux of your argument? Your Honor, I would modify that a little bit. It's not solely the throwing of the flashlight, because you could say it's possible that the car perhaps turned immediately before him and the flashlight entered the side window. I think that's part of it, but primarily that there's such a dispute in the testimony of the witnesses. Mr. Freeberry said, the car was coming directly toward me and I threw the flashlight because, and he said to defend himself, I didn't want to get hit. And he had a gun in his hand at the same time, right? He did have a gun in his hand at the same time. But the plaintiffs, all of the plaintiffs just about, said that he came from the side of the vehicle. That's a direct dispute in their testimony. Now, it's interesting that the court said, well, Mr. Freeberry may also have been concerned about other individuals, maybe the other officers, and so perhaps he threw the flashlight in an attempt to stop the vehicle. But the interesting thing about that is that does not fit with the facts at all. Mr. Freeberry didn't say, I threw the flashlight because I was concerned about myself and others. He said, I threw the flashlight because I was concerned about myself. The vehicle was coming directly toward me. He was disciplined, wasn't he, for throwing the flashlight? Yes, Your Honor. Is there any reason given for the discipline? I mean, is there something on record where his superior officer said, you are being disciplined because? Yes, Your Honor, there was. And I believe this is at page 14 of our brief. This was Lieutenant Watson, who at the time of his deposition was Captain Watson. And we're quoting from the disciplinary document itself, which is at A107 of our appendix. But Lieutenant Watson said, quote, that Freeberry, quote, threw his flashlight at the vehicle as it passed him in an attempt to stop the fleeing vehicle. And then he said, quote, this type of force was deemed unreasonable and the use of Freeberry's flashlight in the situation unjustifiable. That doesn't really take a position one way or the other on the different factual scenarios, i.e., where Freeberry was when he threw the flashlight. No, Your Honor, because at that point, of course, when he wrote that disciplinary document in 2001, Lieutenant Watson did not have the benefit of the plaintiff's testimony, which differs completely and markedly from Mr. Freeberry's. No, I'm just saying it doesn't answer one way or the other. Yes, Your Honor. Yes, Your Honor. But even in that case, where all he had was Mr. Freeberry's version of what had happened, he still found it to be unreasonable. And he said that it is part of New Castle County police policy for a flashlight not to be used to stop speeding vehicles. And that goes to both the reasonableness of Mr. Freeberry's conduct and whether the right was clearly established in his mind. Is there some citation for that statement, some support? That is, that a local police department's policy is relevant and appropriate to consider in determining the scope of the constitutional provision against excessive force? Well, Your Honor, we don't have a direct citation in support of that proposition, but certainly our argument is that that should be taken into consideration by the court. In other words, if these are policies that an officer is to be aware of and that policy states you are not to use your flashlight to attempt to stop a speeding vehicle, then that certainly is relevant. We also believe that... We have to determine whether a reasonable officer in his position would have known he was violating the constitutional rights of Mrs. Cowden, right? Yes, Your Honor. But in addition, it's not necessary for the court to rely solely on Lieutenant Watson's disciplinary statements or his deposition statements because, again, in the facts of this case, construing the facts in a light most favorable to the plaintiffs, the plaintiffs said that Mr. Freeberry was running at the vehicle from the side of his vehicle. There was no threat to his safety, and according to Mr. Freeberry, he had no thought of any other people's safety or any other officer's. So on those facts alone, it was unreasonable or, I'm sorry, the court erred in granting summary judgment in favor of Mr. Freeberry. You're going to run out of time here. Yes, Your Honor. We better move to Adam's claim. Tiffany testified that, at most, it was two minutes from the time that she and Freeberry came into the kitchen and she started saying, that's my brother. Yes, Your Honor. Is that a reasonable, he has somebody there with him that he is protecting or securing? Is that, in a situation like this where they don't know who Adam is and they've got reason to believe that he's a burglar, can we really say it's unreasonable that he didn't intervene in some way with the people who were subduing? It was only two minutes from the time she said, that's my brother, until they got off him and, well, she said at most it was two minutes between the time that they were subduing him and the time they stood him up and were no longer subduing him, right? Well, Your Honor, again, this goes to the facts here and the disputed facts. It's interesting that the defendants say they thought it was a burglary, but at the time they told Mrs. Cowden that they thought that Adam was a fugitive. And so, you know, again, the facts and purposes of summary judgment are that Adam simply went into the house without looking into the rear windows, carrying his skateboard into the garage. And again, our contention is that the jury should be the one weighing these various facts, weighing these disputes about what was going on as to whether it was reasonable for the officers to assault Adam and therefore whether it was reasonable for Mr. Freeberry to assist them in their assault of Adam by restraining Tiffany. I'm missing your point. Why, if they thought he was a fugitive or whether they thought he was a burglar, what relevance is that to anything that's before us? Because, Your Honor, the point there is that they're using different stories at different times. Did they think he was a fugitive? Did they think he was a burglar? Are these just excuses that they're using when all they saw was a young boy with his skateboard walk directly into a garage? And it's for the jury to determine. No, that's not quite true. Tiffany told them there was nobody in the house, and they knew there was somebody in the house, right? Yes, to her knowledge, there was no one in the house, but they knew that a young boy carrying his skateboard had walked into the rear of the home or walked into the garage. All right, thank you. Yes, thank you. Afternoon, Your Honors. May it please the Court? Michelle Allen on behalf of Officer Jay Freeberry. Your Honors, despite what Mr. Primus has stated, the district court actually Could you pull that microphone over in front of you? Thank you. Sure. The district court actually did construe the facts in the light most favorable to the plaintiffs in this case, regardless of the fact of whether or not the plaintiffs have sort of contradicted stories. If you look at the totality of the circumstances in the event that was happening, we understand it's now before this court, the circumstances that led to the vehicle speeding off and leaving the area. But at the time that the vehicle actually does leave the area, Officers Freeberry and Officer Armstrong are now approaching the house to investigate what they believe to be a burglary. And I understand that we're not here for that. However, what happens is, as Officer Freeberry views Officer Armstrong go up to investigate the vehicle, he's going to the back of the house. The next thing he knows is this vehicle, in accordance with plaintiffs' own admissions, comes zooming across the back of the yard, not pulls out of the driveway and turns onto the street. It comes across the yard. Ms. Cowden admits that by her own admission, she floors the gas pedal, she nearly hits a garage, she nearly hits a tree, all of which, as the district court pointed out, even if not headed directly in the same direction of Officer Freeberry, he's clearly in what she classified as a zone of danger, that it was a... He does have his gun drawn, is that right? He does have his weapon at, Your Honor, yes. So he has his gun in one hand and he has what appears to be a large object. We know now that it's a flashlight. Correct. But it's one of those 12 or 14-inch flashlights. Yes, Your Honor. Does Officer Armstrong have his gun out as well? Yes. And does he have one of these large flashlights as well? I believe he was carrying one as an authorized equipment, but I am not sure whether or not he actually had it out at the time. But it's clear he wasn't anywhere near his... Clearly his life and body were not in jeopardy. He had tried to... Without saying he was a policeman and with a gun in his hand, he tried to open the door, and that's what sparked her to drive off. So we know he was behind the car. And there's evidence that the other officer, the one we're concerned with here, was to the side of the car and running towards it because he threw it through a side window and there is testimony that he was running towards the car, right? Yes, Your Honor, and I think that the testimony is that he's running out from the back of the house, and as the car is now taking off across the grass and the path, there are a number of trees in the way as well as the house and the garage. But as Ms. Cabinet states, she says, I almost hit the garage, and Mr. Freeberry is coming from the back of the house, coming towards the side. So it's almost a situation, Your Honor, where I think the car is pulling out this way, Officer Freeberry hears this car taking off, sees it coming off in an erratic manner, and they almost cross points, so to speak. How would that be, that they would cross points? If he has a gun and a flashlight in his hand, he throws the flashlight and it goes through the passenger side window, the front part or back? It's my understanding, Your Honor, that it's the front part of the window. Okay. And it ends up in the back seat, but it comes. Which, Your Honor, it's interesting. And we haven't, there has been no testimony below as to an actual expert that could say, you know, how the flashlight was thrown. But if it was thrown through the front passenger's window and then ends up in the back seat, it could be consistent with the vehicle heading towards him, but Officer Freeberry then throwing his flashlight. But it would not directly have to come through the front windshield if he was directly in the center of, if Officer Freeberry was directly in the center of where the vehicle was pointed towards him, that that could come through the front window. But it also could be, and as Mr. Primus had stated, depending on how the vehicle was swerving as to whether it was headed toward him, towards one direction, and then turned off. Doesn't all this say that there are questions of fact? That's exactly what I was going to ask. Where the car was, where he was, particularly if, and I think everyone concedes that, were to take the facts in the light most favorable to the plaintiff's appellants here. Absolutely. Does that mean there shouldn't be summary judgment? Well, I'm sorry, let me rephrase it. Not absolutely that there is an issue of fact here, but if you look at particularly the district court's opinion that Her Honor gave during, it was an oral opinion issued, which has been attached to the briefs, that she does not consider in making her decision that Officer Freeberry is entitled to qualified immunity, she does not make that decision based upon the fact that the vehicle is headed directly at him, but more so the fact that he is in this zone of danger and that it was reasonable for him at the time and in light of all the way the situation was unfolding. How can you be in a zone of danger when a car, according to... Is going away from you. The testimony is going away from you. You have a gun and you have a huge flashlight and you throw it into the side. Well, I don't believe that there's any testimony below that the vehicle is actually going away from Officer Freeberry. I think that the testimony below, particularly in light of the minor children that are in the car, state that the vehicle is being driven in a completely erratic manner. It's turning, it's headed towards a tree, it's headed towards a garage. All of the area that Officer Freeberry is in. The testimony is if the car were... If he was in front of the car and then moved, the car would have hit the tree. That's the testimony that I recall. But all of this comes back to the same point that the judge raised a moment ago, which is you have whatever the exact number is, four witnesses, five witnesses total, four of whom have one view of the facts, one of whom has another, which seems to cry out for resolution by someone other than a judge because there are genuine issues. Except for your Honor, that there is not a genuine issue as to whether or not, in light of the circumstances that were unfolding that night, Officer Freeberry, in ordering to be justified in throwing his flashlight at the vehicle, did not have to be directly in the line of the vehicle. And that's what the district court held. But that may be, but you still have the fact that he was disciplined by his captain for acting in a way contrary to the policy of law enforcement, which is very important to the issue as to whether it was a constitutional violation or not, whether it was excessive force. I'm not sure about that, but didn't Sergeant Worth, I mean, didn't he say, quote, Freeberry threw his flashlight at the vehicle as it passed him in an attempt to stop the vehicle, end of quote. I think that's a direct quote I took from the report of the disciplinary proceedings. It is, Your Honor, and as... Presumably Sergeant Worth would be willing to testify to the same effect at trial. As it passed him by in an attempt to stop the vehicle, contrary to the judge's finding that it was a reflex action to prevent the car from hitting him. Isn't that a dispute of material fact? Not if, Your Honor, if the district court considered it in the light most favorable to the plaintiffs. And what the plaintiffs want to say is that the car was not headed... They don't dispute the erratic manner that the car is being driven in, and I understand that we're not here for how that came to be, and there's a dispute effect clearly as to how and what Ms. Cowden knew when she drove across the grass. But when she drives across the grass and is leaving the scene in such an erratic manner after the officer's already out and believes that this car is involved in criminal activity, and then the car is headed all over the yard... The car is involved in criminal activity? Is that what they thought? At the time, yes. The officers believed that the car was involved... Why is it erratic? You know, I can't understand. You keep saying that the car was being driven erratically. But if you're trying to avoid a tree, one or more trees that everybody agrees was there, then don't you have to sort of go around? You can't go in a direct way because then you'll hit the tree. And yes, Your Honor, I think that that's exactly right, is that because the driver of the vehicle did not back out of the driveway and go down the street, that further heightened, as this court has already held, further heightened that the reason... Once that car takes off across the lawn, which is not a normal and direct path, that the officers then had reasonable suspicion to investigate that there was a crime being committed. But she was fleeing from a gunman in the nighttime that was trying to get in the car that she and her children were in possession of. And that's the dispute effect below that will be litigated at the trial as to what actually caused her to... Well, that's the point. That's exactly the point. It has to be litigated at trial. But the issue here... But this court was very clear that at the time that Officer Armstrong went up to the car and tried to investigate, this court has ruled that he did not have reasonable suspicion to do that, and Officer Armstrong's case has been... I'm sorry, did we have an opinion in this before? Yes, Your Honor. The Third Circuit, yes. In this case? Yes. Okay. And to address two very quick points, one with respect to the New Castle County policies we put forward are not the constitutional standards, and I believe that that has been held by the U.S. Supreme Court as well as by this court, that the New Castle County policies would not be considered a constitutional standard for Officer Freeberry. Second, with respect to any discipline that he received after, that would again not go towards his qualified immunity because it's at the time that he engaged in those actions whether he knew that his actions were unreasonable. And having been disciplined after the fact does not allow him to have reasonable notification. I want to go back to a question that Judge Stapleton asked you a few moments ago. Are you not either prepared or willing to concede that the quote that he gave you from Officer Wirth would create a genuine issue? The quote that he gave, and I believe it's by Captain Watson at the time, but it is signed off by Sergeant Wirth at the bottom, so we'll assume for the fact that it would be Captain Watson that would give that or support that statement. The fact is that, as I understand the facts to be, that Captain Watson did not interview anybody else except for accept a memo from Officer Freeberry in making that determination. So from Freeberry, that's the conclusion he made and that doesn't create a genuine issue? No, because I don't think even if he would, as I recall the quote that His Honor read was that Officer Freeberry threw the flashlight as the vehicle was passing him. And that does not suggest that he is not entitled to qualified immunity or that his actions were not reasonable. And again, that goes to, based upon the situation, that whether or not he was trying to stop the vehicle from hitting himself and he threw it after that or from hurting others in the area that he would be justified in that. But you've got to take a step back, right? I mean, we've established that there are no others, not established. It was quoted that Officer Freeberry never mentioned a concern for others. Also, the quote from Watson is that Freeberry threw it as the car was passing him in an attempt to stop the vehicle. I mean, the exigency that you're referring to isn't really contained in that statement. I can understand if you don't want to concede that it creates a genuine issue, but I mean, it is at the heart of this matter. But Your Honor, in attempting to stop the vehicle, that's right, throwing the flashlight in an attempt to stop the vehicle, Captain Watson doesn't go on further to say attempting to stop the vehicle from hurting others, attempting to stop the vehicle from passing him. The car was passing him. No, I understand that, but that doesn't, because... The car's passing you. You have this huge flashlight. You have your gun drawn. You have a mother with either two... Minors. Four kids under 12 in the car. Your Honor, and first of all, Officer Freeberry doesn't know that, obviously, at the time... He didn't know what? That there are any minor children. He doesn't know who the occupants of the vehicle are. All he knows at the time is that he... They didn't look like hulking football players. I don't think he saw any of the occupants of the vehicle at the time, but secondly, there are other cases that suggest that if the vehicle is fleeing and the officer may use deadly force, even, to stop that vehicle from fleeing the area. So to suggest that... Those are 100... There was a lot of law on that. No. If you cannot use deadly force to somebody, a felon that's fleeing, unless you think it's necessary to protect yourself or others... That's right, Your Honor, yes. If all of the policemen were behind the car, it would not... But there's no... That law would not be relevant. But there's no testimony to suggest that. Well, there are no others. But at the very... There's no testimony from Freeberry that he's protecting others. The others that... There's no testimony from Officer Freeberry whether or not he was directly asked that question or not. But even to protect... Well, then you can't extrapolate it. Where would you extrapolate it from? But even to protect himself, he may do that in the situation that he was confronted with at that time. Okay. You're running out of time, but let me ask you one. You haven't commented on Adam's claim. Even assuming that Freeberry did not have a reasonable opportunity to intervene while they were subduing Adam, after Adam got to his feet, he was handcuffed for 15 minutes thereafter. And this is after they've asked Tiffany for her identification, have asked him for his driver's license, and he said, I'm too young to have one, et cetera. Asked her about her birth date, et cetera. In the Monroe case from this court, a supervisor who failed to intervene when two innocent people were handcuffed for 10 to 15 minutes used unreasonable force and violated the Constitution. What is the justification? The difference is, Your Honor, that the time that it took actually, because I think that there was no identification, the time that it took for them to ascertain and to confirm, and part of that confirmation, as I recall, was that they needed to call in, and then that's when they were able to confirm that Ms. Cowden had called 911 and sort of situate and figure out all of the facts. And as soon as they were able to figure that out, Adam was no longer handcuffed at the time. So based upon that, it was reasonable then for her to continue to investigate and find out what was going on and try to figure out what the situation was before that. How old was Tiffany at the time? 17, I think. I believe that's right, Your Honor. And Adam was 14. Correct. Okay, we understand your position. Thank you very much. I think you reserved two. I believe it was three. Three, okay. Yes, and I believe that Ms. Allen's argument really demonstrates the genuine issues that are present here. I noticed at one point she said these facts could be consistent with a position. Well, we really don't know what happened at that point, and our position is that it was inappropriate for the court below to serve as a fact-finder in this case. The real question is whether he's entitled to qualified immunity. Can you tie up what is obviously a dispute of fact to the legal issue as to whether he's entitled to qualified immunity? Yes, Your Honor. Of course, the Supreme Court somewhat modified the test after this was decided in the Pearson case. However, Pearson, of course, still held that it is appropriate or can be appropriate for a court to use the saucier test, which is, first of all, was there a constitutional violation? And, of course, using the standards, for example, that were set forth in Graham v. Connor, what was the severity of the crime at issue? A young boy taking his skateboard into a home. Our position is there was no crime at issue here. These officers acted unreasonably and with excessive force. Another one of the Graham factors, is there a threat to the safety of the officer or others? Obviously, construing the facts in a light most favorable to the plaintiffs, there was no threat to Mr. Freeberry. Again, there's several statements and we deny, as Ms. Allen said, we admit that Officer Freeberry was in the erratic path of the vehicle. We deny that. Ms. Cowden said he was charging toward the vehicle from the side of the vehicle. Micah said he wasn't in front of the car. He was over there next to the garage. So there was no threat to Officer Freeberry. All of this going to what legal issue? The issue, again, was excessive force used. And one of the Graham versus Connor factors is, was there a threat to the safety of the officer or others? Well, didn't he reasonably believe, because we're talking qualified immunity, right? Yes, Your Honor. We're not talking what happened. Did he reasonably believe that there was a threat to his safety or to others? If he was running at the vehicle from the side of the vehicle, he never said in his deposition, I was concerned about other officers' safety. The other two officers, as far as he knew, were in the opposite direction of the house. So, again, that would be a factor going to whether there was a constitutional violation. And then the other factor, was the violation clearly established? Again, if there's no threat to his safety, no threat to others' safety. You mean if he didn't reasonably believe? If he didn't reasonably believe that, then yes, Your Honor. Thank you for that question. Because qualified immunity goes to what he believed. Yes, Your Honor. And as far as the reasonableness of his beliefs, our position is that the earlier incident in 1999 goes to that as well, where he was found to have acted improperly in striking a suspect with a flashlight causing a laceration that required eight stitches. And there was a... I thought official immunity was an objective test. How is it relevant? How is that prior discipline relevant? In other words, what did the officer... You say it's relevant to his knowledge, what he knew. Yes. What did he reasonably believe was the case as far as these constitutional violations and whether his actions were unreasonable? When he had previously... An objective test of whether a reasonable officer confronted with these circumstances would know that to do this would violate the Constitution. Yes, Your Honor. Yes, Your Honor. And... What was in this particular fellow's mind about the past is that's relevant, huh? Well, Your Honor, in the sense of whether he was acting reasonably, we would submit that it would be. But again, the Court need not rely on that alone with all of the other factors. Thank you very much. Thank you very much. Thank you both. We'll take the matter under advisement, and we'll go back to showers.